L. C. ANDREWS

*vs.*

THE DIRIGO MUTUAL FIRE INSURANCE COMPANY.

Androscoggin.    Opinion October 14, 1914.

*Agency.   Conditions.   Fire Insurance.   Increase of Risk.   Loss.   Negligence.
Policy.   Proof of Loss.   Reasonable Time.   Waiver.*

The letter in the case, which was obviously a reply to a communication from the plaintiff, his great age, the facts admitted, touching the offer on the plaintiff's part to submit his claim to arbitrators, the silence of the defendant and its neglect to answer communications from the plaintiff, and the further fact that notice, when furnished, was for the benefit of defendant, and that substantially all the facts connected with the fire were known to the defendant before the date of the letter to the Company, June 18, 1913, furnished ample ground for a finding that a statement in writing was rendered "within a reasonable time," as required by the Statute and the terms of the policy.

On motion by the defendant.    Motion overruled.

The policy in this case, upon which this action was brought, was dated February 11, 1911; the fire occurred May 2, 1913, and proof of loss was mailed August 5, 1913.    The plea was the general issue, with brief statement.    The jury returned a verdict for the plaintiff of $1234.24.    The defendant filed a general motion for a new trial.

The case is stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*Newell & Skelton,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

HANSON, J.   This is an action on a fire insurance policy, dated February 11, 1911.   The fire occurred May 2, 1913, and proof of loss was filed August 5, 1913.   The jury returned a verdict for the

plaintiff in the sum of $1234.24. The case is before the court on a general motion for a new trial. The material facts in the case are substantially these:

The fire was caused by smoking a large ham and a shoulder in a shed about twenty feet square. The ham and shoulder were suspended by a tarred string from an iron rod running across the bottom of a wooden barrel, which was inverted over a similar barrel, the latter standing on the wooden floor. A kettle containing the fire and combustible material stood on bricks in the bottom of the lower barrel.

The premises were owned by the plaintiff, who had occupied them for thirty-five years, and continued to live in the house until driven out by the fire. For about two years his daughter and her husband, a Mr. Jackson, had lived there, without any lease or special arrangement, but doing the work about the place and owning some of the personal property. The plaintiff retained full control of the premises, but on account of his advanced age and feeble condition was obliged to secure the assistance of Mr. Jackson and his wife in the management of his farm and care of himself in his sickness. The ham and shoulder were the property of Mr. Jackson, and he was smoking them for use in the plaintiff's home. The plaintiff was confined to his bed at the time of the fire, and was carried from his house by neighbors. He lost his deed and other papers, and much of his personal property, in the fire. The plaintiff introduced a certified copy of the deed of the premises from Charles D. Fox to Leonard C. Andrews, dated Nov. 8th, 1874, and the following letter:

"DIRIGO MUTUAL FIRE INSURANCE CO.
Gorham, Maine
June 18, 1913.

L. C. Andrews,
    Monmouth, Me.

My dear Sir:—

I am very sorry to be obliged to notify you that we cannot see how the Company can legally pay you for your loss which was caused by smoking hams in your carriage house without permission.

Very truly yours,

T. F. MILLETT, Sec'y.

TFM-B."

The proof of loss was offered and admitted, and the following admission was made:—

"It is admitted that August 5, 1913, the firm of McGillicuddy & Morey sent proof of loss of L. C. Andrews to the Dirigo Mutual Fire Insurance Co. at Gorham, Maine; and on the 15th day of August, 1913, we submitted for Mr. Andrews to the same Company a list of three appraisers, from which they were requested to make their selection in the fire loss of L. C. Andrews against the Dirigo Mutual Fire Insurance Co., stating the names, and that no answer was ever made by the Company to either the proof of loss nor did they ever suggest any names from which we could select, or make a selection of ours.

The defendant pleaded the general issue, with the following brief statement:

"1.    That at the time the fire occurred, to wit, on February 21, 1911, the property insured was not then the property of the plaintiff in suit.

2.    That the fire which resulted in the loss of the property, the value of which is in suit in this case, was caused through the gross negligence and want of care of the plaintiff acting through his servants and agents in the care and custody thereof and in the matter in which the fire occurred, and was set directly by the plaintiff or by his servants and agents."

At the conclusion of the plaintiff's testimony, the attorney for the defendant stated to the court that he would not undertake to offer any further testimony, that the facts were brought out practically as they existed, and that he desired "to address the jury on the evidence as it stands."

The defendant contends that the fire was caused by the gross negligence of the plaintiff, and that he has violated two conditions of the policy, namely, that provision that "the policy shall be void if . . . without such consent (that of the Company), the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency, or consent of the insured be so altered as to cause an increase of such risks." And the provision that, "in case of loss or damage . . . a statement in writing . . . shall be within a reasonable time rendered to the company setting forth the value of the property insured," etc., and says "that the only fair inference to be drawn from the evidence is that whatever

was done was the act of the plaintiff done through his agents or employees. Jackson and his wife were doing the active work, but there is no claim of any lease, or independent contract of any sort. The plaintiff remained there; they were simply one family, and, as Mrs. Jackson said, he still had full control of it. The transactions about the place were as much his as though he had been personally present every minute and had done them with his own hand," and that fire was due to gross negligence. That smoking a ham in a shed, without constant watching, was negligence, that the place and means selected, instead of locating the barrel outside the buildings, was inexcusable. In effect defendant claims that the plaintiff was grossly careless, and therefore cannot recover.

We are not able to agree with the defendant's claim that the plaintiff violated two of the conditions of his policy as set out in the brief of counsel, viz.: 1, that the situation or circumstances affecting the risk were so altered, by or with the knowledge, advice, agency, or consent of the insured as to cause an increase of the risk, and, 2, that "a statement in writing" was not rendered to the defendant within a reasonable time, as required by the terms of the policy.

As to the first contention the record does not disclose that it was submitted to the jury, but it does show conclusively that the plaintiff had no knowledge of the situation or circumstances causing the fire, that he had given no instructions in relation to smoking hams, or any other work on that day, or previously, that he did not own the ham in question, or know of its existence. He was 79 years old, and had been ill for months, and in no condition to voluntarily assume control, or in any manner to direct another in the conduct of his farm, or other work. He was helpless and dependent, and the evidence is conclusive that the situation and circumstances affecting the risk were not so altered as to cause an increase of the risk, by or with his knowledge, advice, agency, or consent. Nor does the evidence justify an inference that whatever was done was the act of the plaintiff performed through Mr. Jackson and his wife, as agents, thus violating a condition of the policy.

The defendant relies particularly upon its claim that a proof of loss was not furnished "within a reasonable time." From the briefs of counsel on either side it appears that this question was submitted to the jury by the presiding Justice, and the jury passed upon it, but the defendant says that "in the absence of proof of an express waiver,

it was not a matter of positive instructions by the court to be reviewed on exceptions, but was a question for the jury on which it erred," and "that the only possible way in which the plaintiff can prevail is by reading into the law words which are not there, in order to avoid giving force to the words which are there." Counsel agree that it was a proper question to be submitted to the jury, and in the absence of exceptions, and the charge of the presiding Justice, we must assume that the question was submitted under proper instructions. The words under consideration are the same in the statute and policy, to wit, "within a reasonable time." It is firmly settled in this State that what constitutes reasonable time, on undisputed facts, is not for the jury, but is a question of law. *Hill* v. *Hobart*, 16 Maine, 164; *Greene* v. *Dingley*, 24 Maine, 131; *Libby* v. *Haley*, 91 Maine, 331; *Watson* v. *Fales*, 97 Maine, 366.

Other questions were involved, and the case was necessarily submitted to the jury. It is manifest that there was evidence from which the jury could properly find that there was a waiver of the right of the defendant to require a proof of loss, or that such proof of loss was furnished within a reasonable time. The brief statement does not set up the absence of a proof of loss, or negative a waiver. *Robinson* v. *Ins. Co.*, 90 Maine, 385.

The letter in the case, which was obviously a reply to a communication from the plaintiff on the subject of the loss, the continued illness of the plaintiff, his great age, the facts admitted touching the offer on the plaintiff's part to submit his claim to arbitrators, the silence of the defendant and its neglect to answer communications from the plaintiff, and the further fact that the notice when furnished was for the benefit of the defendant, and that substantially all the facts connected with the fire were known to the defendant before the date of the letter of the Company on June 18, 1913, furnished ample ground for a finding that a statement in writing was rendered within a reasonable time, as required by the statute and the terms of the policy.

It is the opinion of the court that the verdict should stand.

The entry must be,

*Motion overruled.*